**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
RONALD GURRIERI, DIANE MCCAULEY,
LAWRENCE LOISELLE, MARY TEDESCO,
EDWARD DONOGHUE,
*and all others similarly situated,*

                Plaintiff,

           -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY
CIVIL SERVICE COMMISSION,

                Defendants.
-------------------------------------------------------------X

**FILED**
**CLERK**
1:17 pm, Aug 09, 2017
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM OF**
**DECISION & ORDER**
2:16-cv-6983 (ADS)(SIL)

**APPEARANCES:**
**Law Offices of Louis D. Stober, Jr., LLC**
*Attorneys for the Plaintiffs*
98 Front Street
Mineola, NY 11501
        By:    Louis D. Stober, Jr., Esq., Of Counsel

**Bee Ready Fishbein Hatter & Donovan, LLP**
*Attorneys for the Defendants*
170 Old Country Road, Suite 200
Mineola, NY 11501
        By:    Deanna Darlene Panico, Esq.,
                 Michael Paul Siravo, Esq., Of Counsel

**SPATT, District Judge:**

        The Plaintiffs Ronald Gurrieri ("Gurrieri"), Diane McCauley ("McCauley"), Lawrence Loiselle ("Loiselle"), Mary Tedesco ("Tedesco"), and Edward Donoghue ("Donoghue"), commenced this putative class action on behalf of themselves and others similarly situated (collectively, the "Plaintiffs") against the Defendants County of Nassau (the "County"), the Nassau County Police Department (the "NCPD"), and the Nassau County Civil Service Commission (the "NCCSC") (collectively, the "Defendants"), alleging that the Defendants violated the Fair Labor

1

Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") by failing to pay them overtime.

Presently before the Court are two motions: a motion by the Defendants pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the complaint; and a motion by the Plaintiffs pursuant to Rule 15 to amend their complaint. For the following reasons, the Defendants' motion to dismiss is granted in its entirety; and the Plaintiffs' motion to amend in granted in part and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the complaint, and are accepted as true for the purposes of both instant motions.

Each of the named Plaintiffs currently work for the NCPD as Ambulance Medical Technicians, Ambulance Medical Technician Supervisors, or Ambulance Medical Technician Coordinators (collectively, "AMTs"). The Plaintiffs state that the NCCSC is "responsible for the classification of county positions and establishment of compensation for county employees." (Compl. ¶ 14).

There are approximately 130 AMTs in the NCPD. The 1996 MOU Pilot Program (the "1996 Agreement"), which the Court assumes is a collective bargaining agreement, provided a schedule for AMTs. Under the schedule, the AMTs work a four week cycle. During weeks 1 and 2 of the cycle, AMTs work three consecutive 12 hour days, followed by four days off. During week 3, AMTs work three 12-hour days "followed by three calendar days off." (*Id.* ¶ 37). During week 4, AMTs work three consecutive 12-hour days followed by four days off.

The 1996 Agreement allegedly defines overtime as any work exceeding 36 hours per week. However, some AMTs are required to work three extra 12-hour days per year, which are known as "supplemental days." Among those AMTs who had to work the three extra-12 hour days were the Ambulance Medical Technicians, and Ambulance Medical Technician Supervisors assigned to Duty Chart 7. The Plaintiffs were among those AMTs who had to work three supplemental days per year. Therefore, the Court assumes that the Plaintiffs were assigned to Duty Chart 7.

The Plaintiffs state that in 2000, the CSEA, who they do not identify, entered into a memorandum of agreement with Nassau County (the "2000 Agreement"). The 2000 Agreement made the schedule set out in the 1996 Agreement permanent.

The Plaintiffs allege that they were not compensated at overtime rates for their supplemental days. The Plaintiffs claim that when they worked more than 36 hours, they should have been compensated at overtime rates.

Despite the fact that they only work 72 hours every two weeks, AMTs' paychecks state that they work 80 hours. When AMTs overtime rates are calculated, their hourly wage is calculated by dividing 80 hours by their normal pay. Therefore, the Plaintiffs allege, they are undercompensated for their overtime work when they do receive overtime pay.

The Plaintiffs state that "[o]ther departments in the [NCPD], including the Communications Bureau Operators, work similar 12-hour shifts per week and their overtime rate[s] are calculated correctly." (Compl. ¶ 53).

Finally, the Plaintiffs assert that when they "change tours" or trade shifts with other employees, and end up working more than 36 hours due to the change or trade, they are not compensated at overtime rates. Shift trades are known as "mutuals."

3

### 1.  Additional Facts from the Proposed Amended Complaint

The Plaintiffs seek to add or edit the following facts in their proposed amended complaint (the "PAC").

Ambulance Medical Technician Coordinators were among those individuals who were assigned to Duty Chart 7 who had to work three extra 12 hour shifts per year.

Instead of claiming that they worked three 48-hour weeks per year, the PAC alleges that the Plaintiffs worked 48-hour weeks "numerous times per year."

Contrary to the original complaint's allegations, the PAC states that "[o]ther departments in the [NCPD], including Communications Bureau Operators, work similar 12-hour shifts per week and their overtime rates are *not* calculated correctly."  (PAC ¶ 53) (emphasis added to illustrate the edit).  The Plaintiffs contend that the statement in the original complaint that the Communications Bureau Operators' rates were calculated correctly was a "scrivener's error." (Decl. of Louis D. Stober, Jr., Esq. (ECF No. 20-1), ¶ 12).

Finally, the Plaintiffs state that they filed notices of claim on the Defendants on March 13, 2017.

## B.  The Relevant Procedural History

On December 19, 2016, the Plaintiffs filed their initial complaint.  The complaint alleged that the Defendants failed to pay the Plaintiffs for their overtime in violation of the FLSA and the NYLL.

On February 23, 2017, the Defendants filed the instant motion to partially dismiss the complaint pursuant to Rule 12(b)(6).

On March 13, 2017, the Plaintiffs served Notices of Claim on the Defendants pursuant to New York County Law Section 52.

On April 12, 2017, the Plaintiffs filed a motion to amend their complaint pursuant to Rule 15. The Plaintiffs seek to amend three paragraphs and add one paragraph.

## II. DISCUSSION

### A. The Legal Standard for a Motion to Amend

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12–CV–4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also Eur. Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. Cty. of Suffolk*, 29

5

F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) . . . ." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

## B.  The Legal Standard for a Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### C. As to the Plaintiff's Motion to Amend

Although the Defendants filed their motion to dismiss before the Plaintiffs filed their motion to amend, the Court will first deal with the motion to amend, as it may affect the dismissal motion.

The Defendants argue that the Plaintiff's motion to amend is made in bad faith, was unduly delayed; would prejudice the Defendants; would not be in the interests of judicial economy; and is futile. The Defendants argue that the amendments are futile because they state that Ambulance Medical Technician Coordinators were not "assigned to Chart Green or Chart 13;" that the Plaintiffs' FLSA and NYLL claims are constrained to apply to when they worked supplemental days, so any mention of extra hours beyond the supplemental days cannot be considered by the Court; and the wage and hour policies of other departments do not have any bearing on the Plaintiffs' claims. Finally, the Defendants state that the Plaintiffs notices of claim were filed late. In opposition, the Plaintiffs state that they merely wish to correctly state the facts. The Court finds that the Plaintiffs may properly add all the facts they seek to add except for those concerning the service of the notices of claim.

#### 1. As to Whether Undue Delay, Prejudice, or Bad Faith is Present

The Defendants claim that the Plaintiffs have engaged in bad faith because they had the information required to amend the complaint when they filed their initial complaint. Therefore,

7

they state that the Plaintiffs have unduly delayed filing their amended complaint, and that the Defendants would be prejudiced by the amendment because it would slow the progress of the case and discovery would drastically expanded. For their part, the Plaintiffs maintain that it was not until they viewed the duty charts provided by the Defendants in relation to a separate motion that they had the information that lead to the amendments. In the Court's view, the Plaintiffs have not engaged in bad faith; their amendment is not unduly delayed; and the Defendants will not be unduly prejudiced.

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

Here, the Plaintiffs moved to amend less than four months after they filed their initial complaint, and less than two months after the Defendants filed their motion to dismiss. The parties have not even begun discovery, nor have they appeared before this Court or Magistrate Judge Locke. It is of no moment that the amendment would expand the scope of discovery because discovery has not yet begun. Also, the Court fails to see how the Defendants are unduly prejudiced. Certainly, any amendment will change how defendants provide discovery and assert defenses. However, the standard is "unduly prejudiced," and the Defendants have fallen far short of demonstrating that.

Similarly, the Court finds that the Plaintiff has not engaged in bad faith. The Court accepts the Plaintiffs' representation that they did not have the information required for the amendment until they received the duty charts from the Defendants. In any event, even if the Plaintiffs had the information when they filed their initial complaint, that fact alone would be insufficient to demonstrate bad faith.

Accordingly, the Court finds that the Plaintiffs have not engaged in bad faith or undue delay, and that the Defendants would not be unduly prejudiced by the proposed amendments.

**2. As to Whether the Plaintiffs' Proposed Amendments Are Futile**

The Defendants cite to outside evidence in support of their contention that the Plaintiff's motion to add factual information about Ambulance Medical Technician Coordinators is futile. Specifically, they cite to an affidavit from Assistant Chief of the NCPD. While the Court does consider the two duty charts attached to the Assistant Chief's declaration, as those were incorporated by reference to the Plaintiffs' PAC, the Court does not consider the factual assertions made in the affidavit.

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Therefore, the Plaintiffs' motion to add factual information regarding Ambulance Medical Technician Coordinators' assignments is granted.

The Court also grants the Plaintiffs' motion to add factual allegations that they sometimes worked 40 hour weeks other than when they worked supplemental days, as well as that other

9

departments have had their overtime incorrectly calculated.  The Defendants' arguments against these allegations are not that they are futile, but that the Plaintiffs should not be allowed to allege such facts.  The Court disagrees.  The Plaintiffs are not constrained to the weeks when they worked supplemental days.  Clearly, by alleging that they worked 48 hour weeks numerous times per year, they seek to bring causes of action for those weeks.  Nor are the Plaintiffs constrained from stating that the NCPD has mistakenly calculated other employees' overtimes.  The Plaintiffs aver that they do not seek to expand the scope of possible class members, just to include relevant facts.  In the Court's view, this is entirely permissible.

As to the Defendants' arguments related to the Plaintiffs' motion to add factual information regarding the service of the notices of claim, the Court will address those contentions below in the section dealing with the Defendants' motion to dismiss.  The service of the notices of claim sought to cure a defect identified in the Defendants' motion to dismiss, and so it is more easily analyzed in connection with the Defendants' other arguments about the notices of claim.  *MB v. Islip Sch. Dist.*, No. 14-CV-4670 SJF GRB, 2015 WL 3756875, at *4 (E.D.N.Y. June 16, 2015) ("Because plaintiffs moved to amend the Amended Complaint while defendants' motion to dismiss was pending, the Court has 'a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint.'" quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* No. 14–civ–1082, 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014)); *Costello v. Town of Huntington,* No. 14–civ–2061, 2015 WL 1396448, at *1 (E.D.N.Y. Mar. 25, 2015) ("the Court will consider the merits of Defendant's motion [to dismiss] in light of the allegations in the proposed Amended Complaint").

10

Therefore, the Plaintiffs' motion to amend their complaint to add allegations concerning Ambulance Medical Technician Coordinators' assignments; numerous weeks where they worked more than 40 hours which did not always include supplemental days; and the NCPD's failure to correctly calculate other department's overtime is not futile. Accordingly, the Plaintiffs' motion to amend their complaint to add those allegations is granted. The Court will address the allegations concerning the service of the notice of claims below.

**D. As to the Defendants' Motion to Dismiss**

The Defendants argue that the Plaintiff's claims against the NCPD and the NCCSC must be dismissed because, as administrative arms of the County, they cannot be sued as separate entities. They further assert that the Plaintiff's claims relating to mutuals and shift swaps must be dismissed because the FLSA explicitly states that employers do not have to account for shift trades when calculating employees' overtime; that Plaintiffs are not entitled to overtime compensation for any hours worked between 36 hours and 40 hours; and that the Plaintiffs' NYLL claims must be dismissed because they did not serve notice of claims.

In opposition, the Plaintiffs maintain that they are entitled to overtime wages for any hours worked that exceeded 36 hours; they were not required to file notice of claims because they receive the benefit of the public exception; and they filed a notice of claim after they filed their complaint. The Plaintiffs did not respond to the Defendants' other arguments.

**1. As to Whether the NCPD and the NCCSC Can Be Sued as Separate Entities**

It is well-established that "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *see also Rose v. Cty. of Nassau,* 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)

(dismissing claims against the Nassau County police department because "[t]he Police Department is an administrative arm of the County of Nassau"); *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.") (internal citation omitted)). Therefore, the Plaintiff's claims against the NCPD and NCCSC must be dismissed. The Defendants' motion to dismiss the claims against those entities pursuant to Rule 12(b)(6) is granted.

### 2. As to the Plaintiffs' Claims Relating to Mutuals and Shift Swaps

The FLSA has provided for computation of overtime when two employees trade shifts. Section 7 of the FLSA states:

> If an individual who is employed in any capacity by a public agency which is a State, political subdivision of a State, or an interstate governmental agency, agrees, with the approval of the public agency and solely at the option of such individual, to substitute during scheduled work hours for another individual who is employed by such agency in the same capacity, the hours such employee worked as a substitute shall be excluded by the public agency in the calculation of the hours for which the employee is entitled to overtime compensation under this section.

29 U.S.C. § 207(p)(3). The regulations interpreting the FLSA further clarify that:

> Section 7(p)(3) of the FLSA provides that two individuals employed in any occupation by the same public agency may agree, solely at their option and with the approval of the public agency, to substitute for one another during scheduled work hours in performance of work in the same capacity. The hours worked shall be excluded by the employer in the calculation of the hours for which the substituting employee would otherwise be entitled to overtime compensation under the Act. Where one employee substitutes for another, each employee will be credited as if he or she had worked his or her normal work schedule for that shift.

29 C.F.R. § 553.31(a). The rules and regulations for the New York State Department of Labor state that employers shall follow the manner and methods of the FLSA. N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

Therefore, the Plaintiffs' overtime claims related to their mutual and shift swaps cannot be maintained. Accordingly, the Defendants' motion to dismiss those claims pursuant to Rule 12(b)(6) is granted.

### 3. As to Whether the Plaintiffs Are Entitled to Overtime Wages for Working More than 36 Hours a Week, as Opposed to 40 Hours

The FLSA provides that:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. §207. The rules and regulations for the New York State Department of Labor state that employers shall follow the manner and methods of FLSA. N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

To the extent that the Plaintiffs believe that they are owed overtime because of collective bargaining agreements, those claims sound in contract. Accordingly, the Plaintiffs' overtime FLSA and NYLL claims are limited to when they worked more than forty hours in a week.

### 4. As to Whether the Plaintiffs Were Required to File Notices of Claims

The Defendants assert that the Plaintiffs were required to file notices of claims, pursuant to New York County Law §52, and that their failure to file the notices requires dismissal of the Plaintiffs' NYLL claims. The Plaintiffs respond that their suit was filed in the public interest, and they are therefore exempted from the requirement; and that even if they are required to file such notices, they have been filed in a timely manner because the Defendants have continued their alleged wrongful acts. As to this issue, the Court finds that the Plaintiffs had to file notices of

13

claim because they do not qualify for the public exception here, and that their filing of the notices of claim was late.

> New York County Law § 52 requires the filing of a notice of claim for claims
>
> against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature . . . and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees . . . .

N.Y. COUNTY LAW § 52; *see also Feldman v. Nassau County,* 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004); *Keating v. Gaffney,* 182 F. Supp. 2d 278, 291 (E.D.N.Y. 2001). Section 52 of the County Law incorporates New York General Municipal Law §§ 50-e and 50-i ("Section 50-e" and "Section 50-i"). Section 50-e requires that, as a condition precedent to filing a suit where a notice is required, a notice of claim must be filed within ninety days of the incident giving rise to the claim. N.Y. GEN. MUN. LAW 50-e. Pursuant to Section 50-i, a plaintiff must allege in the complaint that "(1) the notice of claim was served; (2) at least thirty days has elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 198 (E.D.N.Y. 2006)

"Notice of claim requirements are construed strictly by New York state courts. Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.,* 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotations and citations omitted); *see also Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) ("Absent a showing of such a Notice of Claim, the complaint may be dismissed for failure to state a cause of action." (internal citation and quotation marks omitted)).

14

A plaintiff who seeks to vindicate a public interest is exempt from the notice requirement. However, the Plaintiffs do not qualify for the exemption. *Mills v. Monroe Cty.*, 59 N.Y.2d 307, 308, 451 N.E.2d 456, 456 (N.Y. 1983) ("[F]ailure to timely file a notice of claim shall be fatal unless the action has been brought to vindicate a public interest or leave to serve late notice has been granted by the court."). This is a private lawsuit for money damages where the Plaintiffs allege that the Defendants are responsible to them. Therefore, this suit does not seek to vindicate a public interest. *See id.* at 311 (stating that an action seeks to vindicate a public interest if it was "brought to protect an important right, and seek[s] relief for a similarly situated class *of the public*, and whose resolution would directly affect the rights of that class or group." (emphasis added)); *see also Henneberger*, 465 F. Supp. 2d at 198 (holding that a private civil rights was not brought in the public interest); *Feldman*, 349 F. Supp. 2d at 539 (finding that an employment discrimination claim that "seeks enforcement of [plaintiff's] private interests" is not in the public interest); *Atkins v. Cty. of Orange,* 251 F. Supp. 2d 1225, 1235 (S.D.N.Y. 2003) ("[T]he public interest exception [to the notice of claim requirement] does not apply when plaintiffs are seeking money damages for the sole purpose of redressing plaintiffs' individual injuries."); *id.* (finding that, while plaintiffs' recovery might have an effect on others' interests, "we do not think such an effect would be of any greater value to the public than any other award to civil rights plaintiffs"); *Flynn v. N.Y. City Bd. of Educ.,* No. 00 Civ. 3775(LAP), 2002 WL 31175229, at *9–*10 (S.D.N.Y. Sept.30, 2002) (same) (New York Labor Law claim).

In this case, the public will not be affected by the outcome; only Suffolk County employees will be affected. The fact that it is a putative class action does not change that concept. Therefore, the Plaintiffs were required to file notices of claim.

15

The Plaintiffs filed their notices of claim after they brought this action. The Defendants maintain that the filing was late because it occurred after this suit was initiated.

As the filing of a notice of claim is a condition precedent to bringing a suit against a county, it necessarily follows that filing a notice of claim after initiating such a suit is late, by its very nature. Therefore, filing a notice of claim after initiating a suit is not timely. *See generally*, *Pierson v. City of N.Y.*, 56 N.Y.2d 950, 954, 439 N.E.2d 331, 332 (N.Y. 1982) (stating that "[t]he 1976 amendments to section 50–e of the General Municipal Law permit a court to grant an application to file a late notice of claim *after* the commencement of the action . . . ." and therefore implying that any notices of claim filed after the commencement of an action are late (italics added)).

Pursuant to Section 50-e, the filing a notice of claim is a condition precedent to commencing a suit. While plaintiffs are permitted to apply to file late notices of claims, federal courts do not have jurisdiction to grant such requests. *Morgan v. Nassau Cty.*, No. 03CV5109SLTWDW, 2009 WL 2882823, at *15 (E.D.N.Y. Sept. 2, 2009) ("The late service of the notice of claim was thus a nullity and this Court is not at liberty to cure this defect."); *Henneberger*, 465 F. Supp. 2d at 200 ("This Court abides by the overwhelming weight of authority among district courts in the Second Circuit and finds that [N.Y. GEN. MUN. LAW] 50–e(7) permits only certain *state* courts—'the supreme court or . . . the county court' in certain counties—to consider and to grant an application for an extension of time." (quoting N.Y. GEN. MUN. LAW 50–e(7))); *Horvath*, 423 F. Supp. 2d at 424.

This court is without jurisdiction to decide whether the Plaintiffs' late notice was sufficient. Accordingly, because the Plaintiffs failed to serve the notices of claim in a timely manner, their motion to amend their complaint to add facts regarding their service of the notices of claim is

16

denied without prejudice; and their NYLL claims are dismissed without prejudice. The Plaintiffs may refile these claims after a state court with jurisdiction to decide the matter holds that the Plaintiffs properly filed late notices of claim.

### III. CONCLUSION

Accordingly, the Plaintiffs' motion to amend is granted in part and denied in part. The Defendants' partial motion to dismiss is granted in its entirety.

The Plaintiffs' motion to amend is granted to the extent that they may add the facts regarding Ambulance Medical Technician Coordinators on Duty Chart 7; that Plaintiffs worked 48-hour weeks numerous times per year; and that other departments' overtime rates are not calculated correctly. The Plaintiffs' motion to amend is denied without prejudice to the extent that they seek to add facts concerning their service of notices of claim on the Defendants. As discussed above, because the notices were filed late, that amendment would be futile.

The Plaintiffs claims' against the NCPD and the NCCSC are dismissed, and the Clerk of the Court is respectfully directed to terminate them as parties. The Plaintiffs' overtime claims will be limited to those weeks where they worked more than 40 hours, not owing to a mutual or shift swap. The Plaintiffs' NYLL claims are dismissed without prejudice with leave to refile upon obtaining an order from a New York State court of competent jurisdiction stating that the late notices of claim were proper.

At this time, only the Plaintiffs' FLSA overtime claims remain against Nassau County, for those weeks when they worked more than 40 hours not due to mutual or shift swaps.

The Plaintiffs are directed to notify this Court within fourteen days of the entry of this order whether they intend to obtain relief as to their NYLL claims in the New York State courts. In the

event that the Plaintiffs express their intent to seek such relief, the matter will be stayed for a reasonable period of time pending the decision of the state court.

It is **SO ORDERED:**

Dated: Central Islip, New York
August 9, 2017                           _____/s/ Arthur D. Spatt_____
                                              ARTHUR D. SPATT
                                           United States District Judge