UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
RONALD GURRIERI, DIANE
MCCAULEY, LAWRENCE LOISELLE,
MARY TEDESCO, EDWARD
DONOGHUE, *and all others similarly
situated*,

         Plaintiffs,

  -against-

COUNTY OF NASSAU,

         Defendant.
----------------------------------------------------------x

**MEMORANDUM
AND ORDER**

16-CV-6983 (ADS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Plaintiffs Ronald Gurrieri ("Gurrieri"), Diane McCauley ("McCauley"), Lawrence Loiselle ("Loiselle"), Mary Tedesco ("Tedesco"), and Edward Donoghue ("Donoghue," and collectively "Plaintiffs") commenced this action on behalf of themselves and all others similarly situated seeking, *inter alia*, unpaid overtime compensation from Defendant County of Nassau ("Defendant" or the "County"), pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*. and the New York Labor Law ("NYLL"). *See* Amended Complaint ("AC"), Docket Entry ("DE") [40].[1]

Presently before the Court, on referral from the Honorable Arthur D. Spatt for decision, is Plaintiffs' motion for an order: (i) conditionally certifying this matter as an FLSA collective action pursuant to 29 U.S.C. § 216(b); (ii) directing Defendant to

---

[1] The Nassau County Police Department and Nassau County Civil Service Commission were originally named as additional Defendants, but both were dismissed from the action. *See* Section I(B), *infra*.

provide Plaintiffs' counsel with a computer-readable data file containing the names, addresses, and telephone numbers of all potential opt-in members, namely, current and former nonexempt Ambulance Medical Technicians ("Technicians"), Ambulance Medical Technician Supervisors ("Supervisors"), and Ambulance Medical Technician Coordinators ("Coordinators," and collectively with Technicians and Supervisors "AMT Personnel"), dating back six years from the filing of the Complaint; (iii) authorizing circulation of a proposed Notice of Lawsuit with Opportunity to Join (the "Proposed Notice"), *see* DE [8-2], Ex. G, to the putative class via United States Postal Service first-class mail; and (iv) authorizing the posting of the Proposed Notice at the Emergency Ambulance Bureau Office and Medical Control Office, located within the Nassau University Medical Control Office at 2201 Hempstead Turnpike, East Meadow, New York 11554 (the "Ambulance Office").   DE [8]; DE [73]; *see also* Plaintiffs' Memorandum of Law in Support of Their Motion to Proceed as a Collective Action and to Facilitate Notice ("Pltfs.' Mem."), DE [8-1]; Plaintiffs' Memorandum of Law in Further Support of Their Motion to Proceed as a Collective Action and to Facilitate Notice ("Pltfs.' Reply"), DE [19].   Defendant opposes conditional certification, and certain aspects of the Proposed Notice and requested methods of its dissemination.  *See generally* Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification of a Collective Action ("Def.'s Opp."), DE [14].  For the reasons set forth below, the motion is granted in part and denied in part as detailed herein.

2

I.     **Background**

    A.     <u>**Relevant Facts**</u>

The following facts are taken from the Amended Complaint and declarations submitted in support of the instant motion, and are accepted as true for the purposes of the motion.[2]

The County is a municipal corporation incorporated under the laws of the State of New York. *See* AC ¶ 15.  Plaintiffs, current nonexempt employees of Defendant, hold various AMT Personnel positions within the County, the Nassau County Police Department, and the Nassau County Civil Service Commission.  *Id.* ¶ 1.  The duties of AMT Personnel – whether as a Technician, Supervisor, or Coordinator – mainly involve being dispatched via radio calls to individuals in need of medical treatment. *See id.* ¶ 36.  Specifically, Technicians are responsible for assessing patients and performing advanced life support techniques to help sustain life while en route to a hospital.  *Id.*; *see also* McCauley Decl. ¶ 4.  Supervisors are tasked with "managing subordinates and assignments, coordinating EMS communication and resources, monitoring employee shifts, time and leave, assessing quality of paperwork, patrolling the County …, responding to emergency assignments, and assisting EMS personnel and units as well as responding to police personnel."  Donoghue Decl. ¶ 4. Coordinators duties include "overseeing [Supervisors] and subordinate [Technicians],

---

[2] Plaintiffs each submitted a declaration in support of the instant motion.  *See* Declaration of Ronald Gurrieri ("Gurrieri Decl."), DE [8-2] at 30-36; Declaration of Diane McCauley ("McCauley Decl."), *id.* at 37-42; Declaration of Mary Tedesco ("Tedesco Decl."), *id.* at 43-48; Declaration of Lawrence Loiselle ("Loiselle Decl."), *id.* at 49-54; Declaration of Edward Donoghue ("Donoghue Decl."), *id.* at 55-60 (collectively, "Pltfs.' Decls.").

responding to emergency assignments, rendering aid when necessary, investigating complaints and providing written reports when necessary." Gurrieri Decl. ¶ 4. Gurrieri began working for the County in 1980 as a Technician, was promoted to Supervisor in 1992, and has been a Coordinator since 1997. *See* AC ¶ 10. McCauley had been employed as a Technician since 1994. *See id.* ¶ 11. Tedesco started out as a Technician in 1994 and has been a Supervisor since 2016. *See id.* ¶ 12. Loiselle began working as a Technician in 1991 and remains in that role. *See id.* ¶ 13. Donoghue started as a Technician in 1988 and has been serving as a Supervisor since 2015. *See id.* ¶ 14.

The County's AMT Personnel previously worked pursuant to a 1996 MOU Pilot Program (the "1996 MOU"). *See id.* ¶ 38. The 1996 MOU sets forth the schedule of AMT Personnel, which consisted of a four-week cycle as follows: (i) three consecutive 12-hour days for a total work week of 36 hours, followed by four calendar days off, in weeks one, two, and four; and (ii) three nonconsecutive 12-hour days for a total work week of 36 hours, followed by three calendar days off, in week three. *See* AC ¶¶ 38-40; *see also, e.g.*, Gurrieri Decl. ¶ 8. In 2000, the Civil Service Employees Association, Inc., Local 830 (the "Union"), the collective bargaining agent for AMT Personnel, entered into a second MOU with the County, which, *inter alia*, memorialized the permanency of the 1996 MOU's work schedule (the "2000 MOU," and collectively with the 1996 MOU, the "MOU"). *See id.* ¶¶ 46-47. The MOU purportedly defines overtime as any work exceeding 36 hours per week. *See* AC ¶ 41. Pursuant to the MOU, however, some AMT Personnel, including Plaintiffs, who are assigned to Duty

4

Chart Green ("Chart Green") are required to work three extra 12-hour days per year (the "Supplemental Days"). *See id*. ¶¶ 42-43.  As a result, Plaintiffs work 48 hours in a given week "numerous times per year." *Id*. ¶ 48.

Plaintiffs therefore allege that the County has, *inter alia*, violated the FLSA by failing to pay them owed overtime compensation. *Id*. ¶¶ 1-2, 49.[3]  Specifically, Plaintiffs claim that they have not been paid any overtime wages for weeks when they worked a Supplemental Day (*i.e.* 48 hours). *See id*. ¶ 50.  Further, Plaintiffs contend that when they *are* paid overtime – for weeks when they work more than 40 hours for reasons other than Supplemental Days – the hourly rate is being improperly calculated, resulting in them being paid less than they are owed. *See id*. ¶ 51.  This underpayment, Plaintiffs allege, is caused by their bi-weekly paychecks reflecting a salary divided by an 80-hour two-week period instead of the 72 hours they actually work in a regular fortnight. *See id*. ¶ 52-53.  Thus, Plaintiffs claim both that they have been deprived entirely of overtime wages on some occasions, and underpaid on others. *See id*. ¶¶ 50, 54.  Plaintiffs contend that they, along with approximately 140 other AMT Personnel, have all suffered substantially similar wage deprivations. *See id*. ¶¶ 20, 37.  Finally, Plaintiffs allege that the County became aware that it was improperly calculating AMT Personnel's overtime rate in 2011, but that it failed to correct the issue. *See* Further Declaration of Ronald Gurrieri ("Gurrieri Supp. Decl.") ¶ 11.

---

[3] As discussed below, Judge Spatt dismissed any FLSA overtime claims concerning hours worked between 36 and 40 in a given week. *See* Section I(B), *infra*.

## B.   Relevant Procedural History

Based on the above, Plaintiffs commenced this lawsuit on December 19, 2016, seeking to recover, *inter alia*, damages pursuant to the FLSA and NYLL.  *See generally* Complaint, DE [1].  In addition to the allegations contained in the Amended Complaint, outlined above, the initial Complaint claimed that Plaintiffs were deprived of overtime wages for weeks that they swapped shifts ("Mutuals"), meaning that they would work in excess of 36 hours in a given week as a result of trading shifts with a coworker.  *See* Complaint ¶¶ 54-56.  Additionally, the original Complaint named the Nassau County Police Department ("NCPD") and Nassau County Civil Service Commission ("NCCSC") as Defendants.  Before the County responded to the initial Complaint, Plaintiffs filed the instant motion for conditional certification of an FLSA collective action on February 13, 2017, and the motion was fully briefed on April 10, 2017.  *See* DEs [8], [14], [18], [19].

On February 23, 2017, the County moved to dismiss the original Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "MTD").  *See* DE [9].  The MTD contended that the following portions of the Complaint were subject to dismissal:  (i) the claims asserted as against the NCPD and NSSC; (ii) the allegations concerning Mutuals; (iii) the claims for unpaid overtime wages for hours worked between 36 and 40 in a given week; and (iv) the NYLL cause of action, in light of Plaintiffs' failure to serve a Notice of Claim pursuant to New York County Law § 52.  *See generally* Memorandum of Law in Support of MTD, DE [9-1].  In opposing the MTD, Plaintiffs claimed the FLSA entitled them to overtime compensation for hours worked between 36-40

because the MOU dictated that 36 hours was a regular workweek, and also contended that they were not required to serve a Notice of Claim for the NYLL claims due to an exemption for suits brought to vindicate a public interest. *See generally* Memorandum of Law in Opposition to MTD, DE [12]. Nevertheless, Plaintiffs served a Notice of Claim on March 13, 2017 to "cure any perceived deficiency." *See id*. at 6.

In addition to opposing the MTD, Plaintiffs moved for leave to amend their Complaint on April 12, 2017 (the "MTA"). *See* DE [20]. The MTA sought to amend three paragraphs and add one other. *See generally* Declaration of Louis D. Stober, Jr., Esq. in support of MTA, DE [20-1]. The proposed revisions to the existing paragraphs were immaterial as far as the instant decision is concerned. *See id*. The additional paragraph included an allegation that Plaintiffs had served their Notice of Claim (although they still contended this was not necessary). *See id*. ¶ 15.

On August 9, 2017, the Honorable Arthur D. Spatt issued a Memorandum of Decision and Order resolving both the MTD and MTA (the "MTD Decision"). *See* DE [25]. With respect to the MTD, Judge Spatt dismissed: (i) all claims as against the NCPD and NCCSC because, as administrative arms of the County, neither can be sued as a separate entity; (ii) the allegations concerning weeks where overtime was worked as a result of Mutuals because the FLSA and its implementing regulations explicitly exempt hours worked in that regard from overtime protection; and (iii) any claims with respect to unpaid overtime for hours worked between 36 and 40 in a given week because, insofar as the MOU deemed those hours overtime, such relief would lie in a claim for breach of contract rather than arise under the FLSA. *See* MTD

7

Decision at 11-13. In addition, Judge Spatt dismissed the NYLL cause of action opining that Plaintiffs *were* required to serve a Notice of Claim prior to commencing suit because their allegations did not qualify for the public interest exemption. *See id*. at 13-16. The NYLL claims, however, were dismissed without prejudice such that Plaintiffs were given an opportunity to seek relief in state court concerning whether the untimely service of their Notice of Claim was sufficient. *See id*. at 16-17. In sum, Judge Spatt: (i) granted the branch of the MTA seeking to *revise* certain paragraphs of the Complaint; (ii) denied without prejudice the portion of the MTA requesting to *add* an allegation concerning the Notice of Claim; (iii) dismissed the claims as against the NCPD and NCCSC; (iv) limited Plaintiffs surviving claims to weeks in which they worked more than 40 hours, not as a result of Mutuals; and (v) dismissed the NYLL claims without prejudice, with leave to refile upon obtaining an order from a New York State court dictating that the late Notice of Claim was adequate. *See id*. ¶ 17. Finally, Judge Spatt indicated that if Plaintiffs indeed intended to seek relief in state court with respect to the Notice of Claim issue, that the Court would stay the action pending the outcome of that proceeding. *Id*.[4]

On August 10, 2017, Plaintiffs wrote the Court indicating their intention to obtain relief with respect to the late Notice of Claim from the Nassau County Supreme Court. *See* DE [26]. Thus, on August 11, 2017, Judge Spatt stayed the

_____

[4] On August 16, 2017, Plaintiff filed a Motion for Reconsideration concerning the MTD Decision. *See* DE [27]. That motion was terminated on September 20, 2017 because the case was stayed, and was reinstated on May 7, 2018 once the stay was lifted. *See* September 29, 2017 Order Terminating Motion; *see also* DE [36]. On December 14, 2018, Judge Spatt denied the motion for reconsideration. *See* DE [69].

action, and on August 14, 2017, he terminated the instant FLSA conditional certification motion with leave to refile when the stay was lifted.  *See* August 11, 2017 Order Staying Case; August 14, 2017 Order Terminating Motion.  While the case was stayed, Plaintiffs requested that their FLSA claims be restored while the NYLL-related issue was being decided in state court, as they were concerned with potential FLSA statute of limitations issues arising for putative class members.  *See* DEs [31], [32], [34].  The Court did not rule on these informal requests.

On April 12, 2018, Plaintiffs filed a letter indicating that the Nassau County Supreme Court had deemed their Notice of Claim timely filed *nunc pro tunc*, and requested, *inter alia*, that:  (i) the stay of this action be lifted; (ii) the NYLL claims be reinstated; and (iii) the Complaint be considered amended to include allegations concerning the Notice of Claim.  *See* DE [35].  Thus, on May 7, 2018, Judge Spatt lifted the stay, deemed the complaint amended, consistent with Plaintiffs' April 12, 2018 letter, and restored the NYLL claims.  *See* DE [36].  On May 23, 2018, in response to letters from the parties concerning confusion as to how to proceed with respect to Plaintiffs' amended allegations, *see* DE [37], [38], Judge Spatt directed Plaintiffs to formally file the Amended Complaint.  *See* DE [39].  On June 4, 2018, Plaintiffs filed the Amended Complaint, which became the operative pleading.  *See* DE [40].  The County moved to dismiss the Amended Complaint on July 3, 2018, arguing that the transcripts from the New York General Municipal Law Section 50-h examinations warranted dismissal of the action pursuant to 29 U.S.C. § 207(k) and its implementing regulations, which provide certain overtime exemptions for, *inter*

9

*alia*, law enforcement employers.  *See generally* DE [47-1].  Judge Spatt declined to consider the 50-h transcripts, and, in turn, denied the motion to dismiss the Amended Complaint.  *See* DE [69] at 6-10.[5]  Accordingly, the County answered the Amended Complaint on December 28, 2018.  *See* DE [71].

Discovery is ongoing.  *See* DE [68].  At a status conference before this Court on February 27, 2019, the parties indicated that although discovery was progressing, the pendency of the instant motion for conditional certification was delaying matters.  *See* DE [72] and FTR Log: 11:24-11:30.  At that conference, it became evident that the motion had never been formally restored to the Court's active docket after the stay was lifted.  *See id*.  Thus, on March 4, 2019, Plaintiffs formally sought to reinstate the instant motion, *see* DE [73], and Judge Spatt subsequently referred it to this Court for decision.  *See* DE [74].

In their motion, Plaintiffs seek an order conditionally certifying this case as an FLSA collective action and permitting dissemination of the Proposed Notice to all AMT Personnel who worked for the County between December 19, 2010 and December 19, 2016 (the date that the case was commenced).  *See generally* Pltf.'s Mem.; Proposed Notice.  Plaintiffs claim that they have made the required "modest factual showing" that they, and other AMT Personnel, "were victims of [the County's] common policies and plans that violate the FLSA and NYLL."  Pltfs.' Mem. at 3-4. Additionally, Plaintiffs argue that they have "established a sufficient factual nexus

---

[5] Judge Spatt's Memorandum of Decision and Order also addressed a number of other motions, none of which are relevant for the purposes of the instant decision.

between their situation and that of the other [AMT Personnel] employed by Defendant[]" such that conditional certification is warranted. *Id*. at 4. The motion further seeks authorization to circulate the Proposed Notice, along with with consent-to-join forms, to potential class members via United States Postal Service first-class mail, in addition to posting it at the Ambulance Office. *See id*. at 9. Finally, Plaintiffs ask the Court to direct the County to produce a computer-readable data file containing the names, addresses, and telephone members of AMT Personnel who worked for the County dating back six years from the filing of the Complaint. *See id*. at 11-12. In support of their motion, Plaintiffs each submit a declaration describing the County's alleged violations and identifying other AMT Personnel purportedly affected by Defendant's conduct. *See generally* Pltfs.' Decls.

In opposition, Defendant contends that not all AMT Personnel are similarly situated in that they are subject to different work schedules and wage and hour policies. *See* Def.'s Opp. at 1, 4. Thus, the County claims that it would be impossible to conduct an efficient and fair trial via a collective action. *Id*. Moreover, Defendant argues that, if the Court were to grant conditional certification, notice should be limited to two years because the statute of limitations for claims under the FLSA is two years for non-willful violations, and there is no evidence that the County willfully violated the FLSA. *See id*. at 5-8. The County also objects to Plaintiffs' request to post the Proposed Notice at the Ambulance Office, claiming it they cannot do so because the premises are not owned by Defendant. *See id*. at 11-12. Finally, the

County contends that the Proposed Notice should be modified in several respects, addressed in detail below. *See id*. at 8-11.

## II.    Discussion

Pursuant to the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of 40 in a given work week. 29 U.S.C. § 207(a)(1). Section 216(b) of the FLSA provides that:

> An action … may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "[D]istrict courts 'have discretion, in appropriate cases, to … facilitat[e] notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482 (1989)).

Consistent with this discretion, and as detailed below, the Court: (i) conditionally certifies this case as an FLSA collective action; (ii) authorizes the dissemination of notice of the litigation, subject to the conditions set forth herein; and (iii) orders Defendant to produce contact information for potential opt-in plaintiffs.

### A.    **Conditional Certification**

Courts in the Second Circuit apply a two-step analysis to determine whether a collective action under Section 216(b) of the FLSA should be certified. *See Myers*, 624

F.3d at 554.  First, the Court evaluates whether the proposed class members are "similarly situated" to the named plaintiffs.  *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001).  If the Court finds that the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to "opt-in" to the litigation and be bound by its result. *Id.* (citing 29 U.S.C. § 216(b)).  "[T]he key question for the similarly situated inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated."  *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 656 (S.D.N.Y. 2017) (internal quotations and citations omitted).  The second step generally occurs following completion of discovery and requires examination of the evidentiary record to ascertain whether the opt-in plaintiffs are, in fact, similarly situated.  *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  The present motion concerns only the first step of the certification process – whether the proposed class members are similarly situated such that conditional certification is appropriate.

At the conditional certification stage, "the evidentiary standard is lenient." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential plaintiffs are similarly situated is very low at the notice stage") (internal quotation and citation omitted).  Plaintiffs seeking conditional certification "need only make a modest factual showing sufficient to demonstrate that

they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal quotation and citation omitted). "This low burden is consistent with the broad remedial purpose of the FLSA." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013) (internal quotation and citation omitted). At this stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (quoting *Francis v. A & E Stores, Inc.*, No. 06-cv-1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008), *report and recommendation adopted as modified*, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) (internal quotation omitted)); *see also Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification").

To be entitled to conditional certification, a movant is not required to prove an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-cv-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see also Sexton v. Franklin First Fin., Ltd.*, No. 08-cv-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required") (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). "Courts will certify

14

broad classes where there is some showing that all members of the putative class performed the same duties ... or that the employer had uniform company-wide employment practices." *Vasquez v. Vitamin Shoppe Indus.*, Inc., No. 10-cv-8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (internal citation omitted). "It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs." *Cano v. Four M Food Corp.*, No. 08-cv-3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009). Rather, the appropriate inquiry is whether the prospective class members "were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs." *Id.* (emphasis in original). The determination that potential opt-in plaintiffs are similarly situated is typically based on the pleadings and declarations submitted in support of the motion. *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) ("courts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits").

In this case, Plaintiffs have made a sufficient factual showing that they and the potential collective action members – other nonexempt AMT Personnel who have purportedly been denied overtime wages by the County – were together victims of a common compensation policy that violated the FLSA. The Amended Complaint alleges that, pursuant to the MOU, Plaintiffs and similarly situated AMT Personnel

15

regularly work a four-week cycling schedule consisting of:  (i) three consecutive 12-hour days for a total work week of 36 hours, followed by four calendar days off, in weeks one, two, and four; and (ii) three nonconsecutive 12-hour days for a total work week of 36 hours, followed by three calendar days off, in week three.  *See* AC ¶¶ 39-40; *see also, e.g.*, Gurrieri Decl. ¶ 8.  In addition, Plaintiffs claim that the MOU requires AMT Personnel assigned to Chart Green to work three extra Supplemental Days each year.  *See id*. ¶¶ 42-45.  As a result, AMT Personnel purportedly work 48-hour weeks "numerous times per year."  *See id*. ¶ 48.  The Amended Complaint further alleges that, despite sometimes working 48 hours in a given week as result of Supplemental Days, Plaintiffs are not paid overtime wages for any hours worked in excess of 36.[6]  *See id*. ¶¶ 49-50.  Moreover, Plaintiffs contend that when AMT Personnel *are* paid overtime (on weeks when they worked more than 36 hours for reasons other than Supplemental Days), their overtime compensation was incorrectly calculated as a result of the hourly rate being determined based on a salary divided by an 80-hour two-week period rather than their ordinary 72-hour biweekly cycle. *See id*. ¶¶ 51-53.  Thus, AMT Personnel are purportedly underpaid in both respects. *See id*. ¶ 54.  Finally, Plaintiffs assert that all of the approximately 140 AMT Personnel employed by the County are subject to these wage violations.  *See id*. ¶¶ 20, 37.

The Amended Complaint's allegations are supported by Plaintiffs' respective declarations submitted in support of the instant motion, each of which describes the

---

[6] As discussed above, however, these allegations only survive insofar as they relate to weeks in which AMT Personnel worked more than 40 hours.  *See* Section 1(B), *supra* (citing MTD Decision).

County's practice of withholding and improperly calculating overtime wages. *See* Gurrieri Decl. ¶¶ 14-16; McCauley Decl. ¶¶ 9-15; Tedesco Decl. ¶¶ 9-15; Loiselle Decl. ¶¶ 9-15; Donoghue Decl. ¶¶ 9-15. The declarations also name numerous AMT Personnel who are subject to the County's alleged overtime violations despite not being named Plaintiffs. *See*, *e.g.*, Gurrieri Decl. ¶ 22 (naming 17 AMT Personnel subject to purported overtime violations); McCauley Decl. ¶ 21 (listing 10 AMT Personnel subject to alleged overtime violations). Plaintiffs have therefore satisfied the lenient standard applicable at this stage by submitting evidence of a uniform, department-wide practice of overtime violations. *See Vasquez*, 2011 WL 2693712, at *3 (noting that "[c]ourts will certify broad classes where there is some showing . . . that the employer had company-wide employment practices").

The Court is unpersuaded by Defendant's argument that conditional certification is inappropriate because, *inter alia*, some AMT Personnel were assigned to Chart 13 rather than Chart Green, and therefore did not work Supplemental Days. *See* Def.'s Opp. at 4. Initially, Plaintiffs contend that the County "constantly moves individuals off and onto Chart Green" and that AMT Personnel who are not currently assigned to Chart Green *were* for at least a portion of the time at issue in this litigation. *See* Plfs.' Reply at 3. Because it is premature for the Court to resolve factual disputes at this juncture, and since Plaintiffs have alleged that "many" AMT Personnel worked on Chart Green during the relevant time (the extent to which will be uncovered during discovery), the County's contention in this regard is rejected. *See Summa*, 715 F. Supp. 2d at 385.

17

Moreover, this action concerns more than just Supplemental Days.  Although Judge Spatt dismissed claims associated with weeks where overtime was worked due to Mutuals as well as those concerning hours worked between 36-40 in a given week, *see* MTD Decision, there remain viable allegations concerning improper overtime *calculations* for weeks in which overtime *was paid* (when AMT Personnel worked more than 40 hours in a week not due to Supplemental Days or Mutuals), which potentially affect all AMT Personnel.  Finally, the County's contention that Gurrieri is not similarly situated to the other named Plaintiffs or AMT Personnel by virtue of his role as Vice President of the Union causing him to have not worked any overtime since 2004 is similarly rejected.  *See* Def.'s Opp. at 5.  Gurrieri states that he "still work[s] additional overtime" without proper compensation, and posits that work performed on behalf of the Union is deemed time worked in connection with his job requirements.  *See* Gurrieri Supp. Decl. ¶¶ 7-9 (citing Section 7-5 of a Collective Bargaining Agreement between the County and the Union).  Accordingly, Plaintiffs have sufficiently alleged that Gurrieri continues to be subjected to the County's purported wage violations in a manner consistent with similarly situated AMT Personnel.

In light of the evidence that the County's allegedly unlawful practices are widespread and impact AMT Personnel including but not limited to all named Plaintiffs, the Court finds a sufficient "factual nexus" between Plaintiffs' situation and that of the proposed collective action members.  *See Sobczak*, 540 F. Supp. 2d at 362 ("Courts regularly grant motions for approval of a collective action notice 'based

18

upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.'" (quoting *Wraga*, 2006 WL 2443554, at *2)).   Accordingly, the Court conditionally certifies this matter as an FLSA collective action.

**B.    Notice Period**

The Court must next determine the appropriate timeframe applicable to the class.  In this regard, the Court concludes that a three-year window is warranted, and that the statute of limitations should be tolled from the time Plaintiffs initially filed the instant motion.

i.    <u>Applicable Notice Period</u>

Plaintiffs seek permission to include as potential collective action members all AMT Personnel who worked for the County at any time during the time period of December 19, 2010 through December 19, 2016 (the date the Complaint was filed). *See* Pltfs.' Mem. at 10-12; Proposed Notice at 2.   A six-year notice period is appropriate, Plaintiffs contend, because their NYLL claims are subject to a six-year statute of limitations, *see* N.Y. Lab. Law §§ 663(1), (3), and could fall within this Court's supplemental jurisdiction by virtue of 28 U.S.C. § 1367(a), even absent a class certification pursuant to Fed. R. Civ. P. 23.  *See* Pltfs.' Mem. at 10-11; Pltfs.' Reply at 9-10.  Plaintiffs note that several courts in this District have required defendants facing both FLSA and NYLL claims to provide relevant contact information of potential class members for a six-year period prior to the commencement of the action.  *See* Pltfs.' Mem. at 10 (citing *Sharma*, 52 F. Supp. 3d at 461; *Cano*, 2009 WL

5710143, at *10; *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 66 (S.D.N.Y. 2009); *Wraga*, 2006 WL 2443554, at *3).   Conversely, Defendant insists that a two-year notice period is proper because Plaintiffs have presented no evidence that the County willfully violated the FLSA.  *See* Def.'s Opp. at 7.  Citing *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011), the County posits that "[t]he 'growing trend' in this District … is to limit the notice period to the applicable limitations period under the FLSA…."  Def.'s Opp. at 5-6.

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years.  See 29 U.S.C. § 255(a).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Jie Zhang v. Wen Mei, Inc.*, 14-cv-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388); *see also Alvarez v. IBM Restaurants, Inc.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("The Plaintiffs have alleged willfulness in their Complaint . . . and the Defendants deny these allegations.  Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice based on a three-year statute of limitations period).

Here, the Amended Complaint repeatedly alleges that Defendant willfully violated the FLSA.  *See, e.g.,* AC ¶¶ 2, 67, 68.  Moreover, Plaintiffs substantiate their assertion of willfulness by presenting evidence that the County was made aware of

its inaccurate overtime calculations in 2011, after which they adjusted their procedures for Defendant's Fire Marshal employees but failed to make the necessary corrections for AMT Personnel. *See* Gurrieri Supp. Decl. ¶ 11. Accordingly, Plaintiffs have sufficiently alleged willful conduct for the purposes of conditional certification.

The next issue, then, is whether either a three-year or a six-year notice period is appropriate. District courts in this Circuit have reached inconsistent conclusions with respect to this issue. *Compare Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal articulated in *Hoffmann*[-*La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)]."), *with Cano*, 2009 WL 5710143, at *10 ("[T]his Court finds it prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA."). The more recent trend, however, is to "approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred." *Mongiove v. Nate's Corp.*, No. 15-cv-1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016) (quoting *Sanchez v. El Rancho Sports Bar Corp.*, No. 13-cv-5119, 2014 WL 1998236, at *1 (S.D.N.Y. May 13, 2014) (internal quotation omitted)); *see also Hamadou*, 915 F. Supp. 2d at 668 (limiting notice period to three years); *Lujan v. Cabana Management, Inc.*, 10-cv-755, 2011 WL 317984, at *9 (E.D.N.Y. 2011) (same).

The instant motion seeks certification only with respect to Plaintiffs' FLSA claims, and Plaintiffs have not yet moved for class certification of their NYLL claims pursuant to Fed. R. Civ. P. 23. Thus, the Proposed Notice would be directed only to those persons eligible to opt-in to the FLSA collective action. It would therefore be unnecessarily confusing for employees who are ineligible for the FLSA opt-in class to receive a notice that pertains only to the FLSA claims. The Court finds that the resulting inefficiency weighs against notice going back six years, rather than three years. Further, although the Court may eventually certify a class for the NYLL claims, that class would be opt-out, not opt-in, in nature. Thus, those class members would face no risk of claim lapse, even if they did not receive notice of this case at this juncture. *See Hamadou*, 915 F. Supp. at 668. Accordingly, the Court limits the timeframe for notification to the three-year period applicable to Plaintiffs' FLSA claims.

       ii.       <u>Equitable Tolling of the Statute of Limitations</u>

Given the lapse in time that has occurred since Plaintiffs filed their motion for conditional certification in 2017, the Court *sua sponte* addresses statute of limitations issues that have since arisen. Because the instant motion was filed promptly after this action was commenced, the briefing does not address equitable tolling. The parties did, however, file competing letters contemplating this issue after Judge Spatt lifted the stay. *See* DEs [42] – [44]. In their letters, Plaintiffs argue that the lengthy delay caused by the stay resulting from their NYLL claims being dismissed justifies equitable tolling, *see* DEs [42], [44], whereas Defendant contends tolling is

inappropriate because any lapse in time was brought on by Plaintiffs' own doing. *See* DE [43]. Thus, although no formal motion concerning equitable tolling is pending, the Court considers the issue out of necessity and in light of the parties' contemplation of the subject.

"[T]he statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Garriga v. Blonder Builders Inc.*, No. 17-cv-0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018) (citing 29 U.S.C. § 256(b)). The Court, however, "may toll the limitations period to avoid inequitable circumstances" under the doctrine of equitable tolling. *See id.* (internal quotation and citations omitted). One such circumstance where equitable tolling is appropriate is during the period in which the motion for conditional certification is pending. *See Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (applying equitable tolling as of the date of the filing of a conditional certification motion that took seven months to decide); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings"); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-cv-935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) ("The delay caused by the time for a court to rule on a motion, such as one for certification of a collective action in a FLSA case,

may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine") (internal quotation bracket and citations omitted).

Under the present circumstances, the Court concludes it is appropriate to toll the three-year statute of limitations for the period between the initial filing of the motion for conditional certification and the date of this Memorandum and Order.  The record is clear that Plaintiffs diligently pursued conditional certification.  Specifically, Plaintiffs filed their motion on February 13, 2017, less than two months after initiating suit and before Defendant responded to the Complaint. *See* DE [8].  The motion, however, was terminated on August 14, 2017, after Judge Spatt stayed the entire action.  *See* August 14, 2017 Order Terminating Motion; *see also* August 11, 2018 Order Staying Case.  While the case was stayed, Plaintiffs wrote the Court on multiple occasions requesting that the FLSA claims be restored such that the conditional certification motion could be considered pending the outcome of the state court proceeding.  *See* DEs [31], [32].  During this time, plaintiffs also requested permission to refile their FLSA conditional certification motion. *See* DE [31].

On April 12, 2018, Plaintiffs filed a letter indicating that the Nassau County Supreme Court had issued an order three days earlier deeming their Notice of Claim timely filed *nunc pro tunc*, and thus requested, *inter alia*, that the stay be lifted.  *See* DE [35].  On May 7, 2018, Judge Spatt reactivated the case, but the instant motion was never formally restored.  *See* DE [36].  On February 27, 2019, this Court held a status conference, at which point it was brought to the Court's attention that discovery had progressed but that the case was being held up because of the pendency

24

of this motion, which had not yet been decided.  *See* DE [72], and FTR Log: 11:24-11:30.  Thus, on March 4, 2019, Plaintiffs formally moved to restore the motion to the Court's docket.  *See* DE [73].

Based on the foregoing, the Court is satisfied that Plaintiffs have diligently pursued conditional certification from the onset of this case, despite a number of procedural hurdles.  Notwithstanding Defendant's implication that Plaintiffs *chose* to stay the case and thus caused the delay, *see* DE [43], the reality is that Plaintiffs would have been forced to abandon their NYLL claims in order to have the instant motion decided at an earlier date.  The MTD Decision dictated that the entire case would be stayed while the Notice of Claim issue was resolved in state court, and Plaintiffs merely triggered the stay by informing the Court of their intention to seek such relief.  *See* MTD Decision at 17-18; *see also* DE [26].  Moreover, absent tolling of the limitations period, a substantial number of class members may now be time-barred through no fault of their own.  Accordingly, the Court concludes that it is equitable to toll the statute of limitations for the period while the motion for conditional certification was pending (*i.e.*, from February 13, 2014 through the present), and directs that notice be provided to any AMT Personnel employed by the County during that time.[7]

---

[7] The Court notes that any particularized challenge to a given Plaintiff's statute of limitations will be entertained at the appropriate juncture.

C.    **Proposed Notice**

      i.    Content of the Notice

Plaintiffs also move for an order authorizing dissemination of the Proposed Notice to all nonexempt AMT Personnel who were employed by the County between December 19, 2010 through December 19, 2016. *See* Pltfs.' Mem. at 8-9; Proposed Notice. With respect to the content of the Proposed Notice, Plaintiffs contend that the Court should approve the version attached to their motion, *see* DE [8-2], Ex. G, because it is "timely, accurate, and informative[.]" *See* Ptfs.' Mem. at 9. In support of that assertion, Plaintiffs argue that the Proposed Notice informs recipients of the pendency of the action and the opportunity to opt in, gives clear instructions on how to join, accurately describes Plaintiffs' claims, and advises potential class members that they need not participate. *See id.* In addition, Plaintiffs point out that the Proposed Notice informs possible class members that the County will defend against the claims, and that retaliation or discrimination for participation in a FLSA action is prohibited. *See id.*

Defendant argues that the Proposed Notice is defective in several respects and, as such, should not be approved as submitted. *See* Def.'s Mem. at 8-11. As an initial matter, the County requests that the Proposed Notice be modified to reflect all rulings made in connection with the instant motion and the MTD Decision. *See id.* at 8.[8] Defendant also contends that the Proposed Notice should inform recipients about the possibility that they could be responsible for court costs, state that the case

---

[8] Although Defendant's opposition was filed before the MTD Decision was published, its brief contemplates Plaintiffs' claims being narrowed.

is a matter of public record, and clearly delineate its counsel's contact information in addition to Plaintiffs' counsel's information.  *See id.* at 9-11.  Finally, the County points to a typographical error whereby the Proposed Notice should inform potential opt-in members of the right to hire "**y**our" own attorney, as opposed to "our" own counsel.  *See id.* at 10.

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain. S*ee Moore*, 276 F.R.D. at 58 (citing *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  It is well-settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court." *Sobczak*, 540 F. Supp. at 364; *Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate") (internal quotation and citation omitted).

Consistent with this discretion, the Court concludes that a collective action notice should be disseminated to potential opt-in members.  Nevertheless, the Court directs that the Proposed Notice be modified in several respects.  First, the notice must be revised to reflect both the instant Memorandum and Order along with the MTD Decision.  To that end, any reference to the dismissed parties should be

removed, and all references to Defendant must be singular.  Further, the notice must be revised throughout to indicate that the lawsuit only concerns hours worked in excess of 40 in a given week (not 36), and footnote one should therefore be deleted from the first page.  Additionally, consistent with the discussion above, the class should be redefined to only include the period from February 13, 2014 through the present.[9]

In addition to reflecting the Court's rulings, the notice shall explain that this case – and any party's participation in it – is a matter of public record, as such an explanation is informative and Plaintiffs have not offered a specific objection to Defendant's request in this regard.  Further, the typographical error on page two should indeed reflect opt-in members' right to hire "**y**our" own attorney.  Finally, the mailing address listed on the final page of the Proposed Notice must be revised to reflect the proper parties (*i.e.*, "Chodkowski" should be replaces with "Gurrieri").

Notwithstanding the foregoing, the Court agrees with Plaintiffs that the notice should not reference opt-in plaintiffs' potential liability for costs associated with the lawsuit.  *See* Pltfs.' Reply at 11.  Although some courts have approved language to this effect, *see, e.g.*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 110 (S.D.N.Y. 2003), many courts in this District have reached the opposite conclusion.  *See, e.g.*, *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014) (rejecting language in the notice of pendency concerning potential

---

[9] To that end, on the first page, where the Proposed Notice indicates who it is "TO," the relevant time period should also be listed (*i.e.*, "TO: All Ambulance Medical Technicians … *employed by the County between February 13, 2014 and [today]* ").

costs to opt-in plaintiffs); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) (same); *Guzman v. VLM, Inc.*, No. 07-cv-1126, 2007 WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007) ("Given the remote possibility that such costs for absent class members would be other than *de minimis* ... such language is inappropriate"). Accordingly, in light of the FLSA's overarching remedial purpose, the Court will not authorize language stating that opt-in plaintiffs may be required to pay costs in the event they do not prevail.

Nor will the Court approve Defendant's request that the notice clearly delineate its counsel's contact information. Inclusion of defense counsel's contact information is not required to render an FLSA notice fair, and is likely to create confusion rendering distribution or collection of consent to join forms less effective. *See Chhab v. Darden Restaurants, Inc.*, 11-cv-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege").

The Court has reviewed the Proposed Notice in its entirety and, save the issues described above, approves its contents. Accordingly, once Plaintiffs have edited the notice to reflect the above requirements, they should serve a draft on the County on or before June 7, 2019. Defendant should thereafter serve any objections, or give its consent, on or before June 18, 2019. The parties should then file a joint motion for Court approval of the notice's dissemination on or before June 28, 2019. That motion should attach the final version of the draft notice along with a proposed opt-in form.

Upon the Court's approval of the final notice, Plaintiffs shall distribute the same within two weeks.  Finally, all opt-in forms must be filed with the Court within 60 days of the final notice's dissemination.

ii.    Distribution of the Notice

With respect to the manner of distribution, Plaintiffs seek permission to send the Proposed Notice, along with consent-to-join forms, via United States Postal Service first-class mail, as well as to post it in the Ambulance Office.  *See* Pltfs.' Mem. at 7-9.  In support, Plaintiffs assert that AMT Personnel "frequent" that location.  *See id*. at 7-8.  Defendant does not object to dissemination via mail, but claims it cannot post the notice at Ambulance Office because it is not County property.  *See* Def.'s Opp. at 11.  The County, however, fails to substantiate this assertion.  In response, Plaintiffs claim that Defendant "routinely posts other types of notices at the [Ambulance Office] …"  Gurrierei Supp. Decl. ¶ 13.  In light of the Court's "broad discretion to craft appropriate notices that effectuate the overarching policies of the [FLSA's] collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action[,]" *Hernandez*, 2012 WL 4369746, at *6 (internal quotation marks and citation omitted), the Court will permit Plaintiffs to both send the notice to potential opt-in members via first-class mail and post it in the Ambulance Office.  *See Cabrera v. Stephens*, No. 16-cv-3234, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail") (internal quotations and citations omitted).

### D.  **Production of Contact Information**

In addition to the relief discussed above, Plaintiffs seek an order directing Defendant to provide their counsel with a computer-readable data file containing the names, addresses, and phone numbers of all potential collective action members, namely, all AMT Personnel who were employed by the County dating back six years from the filing of the Complaint.  *See* Pltfs.; Mem. at 11.  Defendant does not object to this request, but, as discussed above, seeks to limit the class to two years.

It is typically appropriate for courts in FLSA collective actions to order the discovery of contact information of potential opt-in plaintiffs.  *See Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) ("Disclosure of the names, addresses, telephone numbers, and email addresses of putative class members is commonplace in this district because such information is essential to identifying and notifying potential opt-in plaintiffs"); *Ack v. Manhattan Beer Distributors, Inc.*, No. 11-cv-5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions").

As a general matter, the Court considers Plaintiffs' request to be appropriate, as the information they seek will not be unduly burdensome or disruptive to the County's business operations.  *See Sexton*, 2009 WL 1706535, at *13.  Accordingly, the Court directs Defendant to provide the names, addresses and telephone numbers of potential opt-in members in electronic format to counsel for Plaintiffs.  For the reasons stated above, however, the County only needs to provide such information for

31

potential collective action members employed by Defendant during the three-year period discussed above, consistent with the applicable FLSA statute of limitations. This information shall be provided to Plaintiffs on or before June 7, 2019.

## III.   Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion as follows:

1) this action is conditionally certified as a collective action, with the potential class including any and all current and former AMT Personnel who were employed by the County from February 13, 2014 through the present;

2) Defendant is directed to produce a computer-readable data file containing the names, addresses and telephone numbers of potential opt-in members on or before June 7, 2019;

3) Plaintiffs are authorized to disseminate the final approved notice and opt-in forms via first class mail **within two weeks** of the Court's approval of the final version, and the County is directed to conspicuously post the approved notice and opt-in forms at the Ambulance Office; and

4) the statute of limitations is tolled from February 13, 2014 through the date of this Memorandum and Order.

Dated:      Central Islip, New York
            May 23, 2019              /s/ Steven I. Locke
                                      STEVEN I. LOCKE
                                      United States Magistrate Judge